IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.  CR-23-92-PRW |
| | ) | |
| JONAS DALVEYON TYLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States submits this Response to Defendant's Motion to Suppress Evidence from Traffic Stop (Doc. 22). The defendant, Jonas Dalveyon Tyler (hereafter "Tyler"), asserts that the traffic stop and subsequent search of the vehicle he was driving was unlawful and moves to suppress evidence obtained following the stop. The Court should deny Defendant's motion.

### BACKGROUND

Several days prior to December 21, 2022, Oklahoma City Police Department (OCPD) Sergeant Travis Teague (Teague) of the Violent Crime Apprehension Team received a tip[1] from an anonymous source that Karen Gonzales (Gonzales) was bringing a load of fentanyl from Louisiana to the Days Inn on I-40 and Meridian in Oklahoma City.

---

[1] This tip was relayed to Teague from officers with the Criminal Interdiction Team of Central Oklahoma.

Teague found that Gonzales had an outstanding Oklahoma County warrant for Trafficking in a Controlled Substance and started looking for Gonzales. On December 21, 2022, officers received a tip from a confidential source that Gonzales was at the Days Inn on Meridian. This establishment is known for violent assaults, prostitution, and drug trafficking.

Officer Tyler Harman (Harman) observed three individuals including one who looked like Gonzales in the Days Inn parking lot. They entered a gold Chevy Suburban and drove across the street to a Casey's gas station and parked at the pumps. At this point, Harman was able to observe and confirm identity of Gonzales as she stepped out of the Suburban, went into the store briefly, and returned to the Suburban.

Harman, Teague, and several other officers surrounded the Suburban with guns drawn and detained the three occupants. (Ex. 1, Teague dash video at timestamp 20:09:45) As these officers approached the Suburban, Gonzales was in the front passenger seat. (Ex. 1 at 20:10:58) Teague directed Tyler out from the driver seat of the Suburban. Teague placed Tyler in the back seat of his patrol vehicle after obtaining his identification. Tyler indicated that the Suburban was his vehicle but denied consent to a search of the vehicle. Teague began the process of checking the occupants for warrants - via computer and phone. (Ex. 2, Teague body cam at timestamp 20:13:54). As he processed this check, Teague called a K9 officer to the scene because of the surrounding circumstances including the tip information and the nature of Gonzales' warrant. (Ex. 2 at 20:14:15). Eventually, dispatch informed Teague that Tyler and Melissa Lee (rear passenger) also had outstanding arrest warrants. (Ex. 2 at 20:29).

As officers were arresting Gonzales and checking Tyler and Lee for warrants, Sergeant Keegan Burris arrived with his state certified K9 (Ex. 1 at 20:22:31). The K9 alerted on the Suburban shortly thereafter. Subsequently, officers conducted a probable cause search of the Suburban. Officer Teague found a jacket on the driver seat which had a Sig Sauer, model P365, 9x19mm caliber pistol, bearing serial number 66B308748, in a pocket. The pistol was chamber and magazine loaded. (Ex. 2 at 20:23:50). Harman found a baggie of pills in the console cup holder. The pills field tested positive for fentanyl and weighed six grams.

Harman administered a *Miranda* warning to Tyler who agreed to give a statement. Tyler indicated he had recently taken the pistol from his brother and claimed ownership of the 'Roxy' pills.

## **ARGUMENT**

I.   Initial Detention of Defendant

The Tenth Circuit has held that when an individual with an outstanding arrest warrant is reasonably believed to be a passenger in a vehicle, police may conduct a lawful traffic stop or detention of that vehicle and its occupants.[2] *United States v. Helton*, 232 Fed. App'x. 747, 750 (10th Cir. 2007) (unpublished). See also *United States v. Savath*, 398 F. App'x 237, 239 (9th Cir. 2010) (unpublished) ("Officers may stop a vehicle in which they reasonably believe the subject of a warrant is traveling to execute the warrant.") The *Helton* Court emphasized that a stop based on an arrest warrant for felony drug charges (as

---

[2] In *Helton*, the officer's identification of the passenger as the individual with an active warrant turned out to be mistaken.

3

in the instant case) involves an "inordinate risk." *Helton* at 751. citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977). The government's interest in officer safety is "both legitimate and weighty," given the "inordinate risks confronting an officer as he approaches a person seated in an automobile." *Mimms* at 110. Moreover, an officer conducting a traffic stop may order any occupant out of the vehicle pending completion of the stop. *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997).

Once Harman was able to clearly observe that Gonzales was present in the Suburban, police had a valid basis to stop or detain the vehicle and its occupants. As a part of the stop, police lawfully directed all occupants out of the vehicle.

II.  Scope of Detention

Officers may, without unlawfully expanding the traffic stop's duration, request the driver's license, vehicle insurance and registration; inquire about the driver's authority to operate the vehicle; ask about the presence of loaded firearms in the vehicle; examine any documents produced; run a computer check on the vehicle's registration; run a computer check on persons detained for any criminal history; and issue a citation or warning. *United States v. Wood,* 106 F.3d 942, 945 (10th Cir.1997); *United States v. Shareef,* 100 F.3d 1491, 1501 (10th Cir.1996). It is perfectly reasonable for an officer conducting a traffic stop to obtain identifying information for all occupants of the vehicle and obtain a warrant check on each occupant. *United States v. Kitchell*, 653 F.3d 1206, 1218 (10th Cir. 2011). "While a traffic stop is ongoing ... an officer has wide discretion to take reasonable precautions to protect his safety. Obvious precautions include running a background check

4

on the driver and removing the occupants from the vehicle." *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007)

"[T]he Fourth Amendment does not require officers to use the least intrusive or most efficient means conceivable to effectuate a traffic stop." *United States v. Mayville*, 955 F.3d 825, 832 (10th Cir. 2020). "The proper scope of a traffic stop includes 'certain negligibly burdensome precautions' taken for officer safety." *United States v. Cone*, 868 F.3d 1150, 1151 (10th Cir. 2017).

The totality of the circumstances in this situation, warranted officers taking steps to address safety concerns and suspicions related to drug dealings in addition to the standard procedures of a basic traffic stop. Officers involved in this stop moved through that process with due diligence. After the three occupants were detained, Teague obtained identification information for Tyler and Lee. When Tyler denied consent to search the Suburban, Teague summonsed a K9 officer as he began the process of conducting a check on the occupants through his computer and via phone. This process took approximately sixteen minutes and the K9 alerted to the Suburban before that process was complete.

III.    Attenuation Doctrine

Even if this Court was to find that Tyler was unlawfully detained to some extent, the firearm and related evidence should not be suppressed. In *Utah v. Strieff*, 579 U.S. 232 (2016), the United States Supreme Court found that evidence obtained as a result of an unlawful suspect detention was nonetheless admissible because the officer's eventual discovery that the suspect had an outstanding arrest warrant attenuated the connection between the unlawful detention and the seizure of the associated evidence. Application of

5

the Attenuation Doctrine is guided by three factors: 1) temporal proximity between any unconstitutional conduct and discovery of evidence; 2) presence of intervening circumstances; and 3) purpose and flagrancy of official misconduct. *Id*. at 239.

Initially, a short timeframe between detention and discovery of evidence – within minutes – favors suppression. However, in considering the second factor, the existence of an unrelated pre-existing arrest warrant significantly attenuates any issue related to the detention. *Id*. at 240. Third, exclusion of evidence is warranted "only when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant." *Id*. at 241. The *Strieff* Court noted that application of the exclusionary rule should apply only "where its deterrence benefits outweigh its substantial social costs." *Id*. at 238 *citing Hudson v. Michigan*, 547 U.S. 586, 591 (2006). The Tenth Circuit emphasized that "[s]uppression of evidence … has always been our last resort, not our first impulse." *Id*. The facts present in *Strieff* are markedly similar to the instant case. In both cases, police detain a suspect and shortly thereafter learn of an unrelated arrest warrant. The *Strieff* Court found the presence of an outstanding warrant to be a "critical intervening circumstance that is wholly independent" of the detention circumstances. *Strieff* at 242. The Supreme Court has ruled that evidence flowing from such a detention should not be suppressed.

Defendant's motion omits one key fact: on the evening of December 21, 2022, Tyler had active arrest warrants. These warrants pre-existed any interaction with officers at the

6

Casey's gas station and were unrelated to the events of that night.[3]  Defense has made no suggestion of flagrant police misconduct, and none is apparent.  Police were in the process of checking Tyler for warrants when the K9 alerted to his vehicle, justifying a search.

## CONCLUSION

Suppression of the evidence seized from the Suburban and surrounding statements that flowed therefrom are unwarranted.  As a result, this Court should deny Defendant's motion to suppress.

                                                      Respectfully submitted,

                                                      ROBERT J. TROESTER
                                                      United States Attorney

                                                      *s/ Daniel D. Gridley, Jr.*
                                                      DANIEL D. GRIDLEY, Jr.
                                                      Oklahoma Bar No. 17501
                                                      Assistant United States Attorney
                                                      210 Park Avenue, Suite 400
                                                      Oklahoma City, Oklahoma 73102
                                                      (405) 553-8760 (Office)
                                                      (405) 553-8888 (Fax)
                                                      daniel.gridley.jr@usdoj.gov

---

[3] Tyler had four outstanding Oklahoma City municipal warrants – two for speeding and two for Driving Under Suspension stemming from violations in 2019 and 2020 apparently issued in June 2022.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Michael Noland, counsel for Jonas Dalveyon Tyler.

*s/ Daniel D. Gridley, Jr.*
DANIEL D. GRIDLEY, Jr.
Assistant United States Attorney
